WINFIELD D. SARGENT *v.* GEORGE W. DONAHUE.

January Term, 1920.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 11, 1920.

*Accord and Satisfaction—Unexecuted Accord No Bar to Action on Original Undertaking—Mere Promise as Accord and Satisfaction—Consideration of Evidence When Verdict Directed for Plaintiff—Readiness to Perform Accord Not Satisfaction of the Same—Damages When Agent Sues in Own Name on Contract Made for Undisclosed Principal.*

1.   An unexecuted accord is not a bar to an action on the original undertaking.

2.   Where a creditor accepts the mere promise of his debtor to perform some act in the future in satisfaction of the debt, the mere

promise itself, without performance, is sufficient to extinguish the debt.

3. In considering an exception to the granting of the plaintiff's motion for a directed verdict, the evidence must be viewed in the light most favorable to the defendant.

4. A modification of a contract for the sale and delivery of pulp wood by the plaintiff agreeing to pay a certain increased price and to accept the wood delivered on board the cars as soon as it could be drawn, and by the defendant agreeing to so deliver it, was only an agreement that the original contract might be performed in that particular way, and was not an acceptance by the plaintiff of the mere promise of the defendant in satisfaction of the original contract; and the plaintiff could maintain an action on the original contract for defendant's breach in failing to deliver the wood.

5. Since, under the modified agreement, the plaintiff was not to surrender the original contract to the defendant before the pulp wood was loaded into the cars, the defendant's readiness to load the wood into the cars if the plaintiff would surrender the original contract or release him therefrom was not sufficient to excuse him from performance.

6. A mere readiness to perform an accord, or a tender of performance, or even a part performance and a readiness to perform the rest, is not sufficient satisfaction of the same.

7. Where an agent, buying for an undisclosed principal on commission, enters into a contract in his own name, he can sue for a breach of the contract in his own name, and the rule of damages is the same as if the action were brought for the principal, and is not merely the commission lost, since the other party to the contract can avail himself of all defences that are good, either against the agent or the principal.

ACTION OF CONTRACT for failure to deliver pulp wood. Plea, accord and satisfaction. Trial by jury at the March Term, 1919, Rutland County, *Butler*, J., presiding. The Court directed a verdict for the plaintiff on the question of liability, and the jury assessed the damages. Judgment on the verdict. The defendant excepted. The opinion states the case.

*W. H. Botsford* and *W. S. Fenton* for the defendant.

Failure to perform the new contract did not revive the old one. *Sioux City Stock Yards Co.* v. *Sioux City Packing Co.*, 110 Iowa, 396, 81 N. W. 712; *Pennsylvania Min. Co.* v. *Brady*, 14 Mich. 260; *Morehouse* v. *Bank*, 98 N. Y. 503; *Spier* v. *Hyde*, 78 App. Div. 151, 79 N. Y. Supp. 699.

The defendant was entitled to have the question of modification submitted to the jury, if there was any evidence fairly and reasonably tending to support his claim. *Fitzsimons* v. *Richardson, Twigg & Co.*, 86 Vt. 229; *Morris* v. *Trudeau*, 83 Vt. 44; *Woodsville Guaranty Sav. Bk.* v. *Rogers*, 82 Vt. 468; *Ward's Admr.* v. *Preferred Accident Ins. Co.*, 80 Vt. 321; *Bass* v. *Rublee*, 76 Vt. 395.

*Lawrence, Lawrence & Stafford* for the plaintiff.

SLACK, J.   The parties, on December 6, 1916, entered into a contract in writing, by the terms of which the defendant sold to the plaintiff, and agreed to deliver f. o. b. cars on the D. & H. Railroad, during the winter of 1916 and 1917, one hundred and twenty-five to two hundred cords of four-foot spruce pulp wood, for $8.25 per cord.   The contract contained other provisions not necessary to notice.   The defendant admitted its execution and his failure to deliver the wood, which was the breach assigned.

His defence was that the contract was so modified by parol that he was to deliver to the plaintiff on board the cars at Rutland seventy-five cords of pulp wood, and as much more as he could draw up to one hundred and twenty-five cords, as fast as the same could be hauled from Shrewsbury to Rutland, at $12.50 per cord, and the plaintiff was to return the original contract; that he drew the wood to Rutland, and was ready to perform his part of the modified contract, but was excused from so doing by the refusal of the plaintiff to return the original contract.   At the close of all the evidence the court, subject to the defendant's exception, directed the jury to return a verdict for the plaintiff for the damages they found he had sustained by reason of the defendant's failure to fulfill the original contract.

[1]   If an accord and satisfaction were established, this suit cannot be maintained.   It is a familiar rule that an unexecuted accord is not a bar to an action on the original undertaking. *Manley* v. *Vermont Mutual Fire Ins. Co.*, 78 Vt. 331, 62 Atl. 1020, 6 Ann. Cas. 562; *Boston & Maine R. R.* v. *Union Mutual*

*Fire Ins. Co.,* 83 Vt. 554, 77 Atl. 874; *Bryant* v. *Gale,* 5 Vt. 416; *Rising* v. *Cummings,* 47 Vt. 345; *Welch* v. *Miller,* 70 Vt. 108, 39 Atl. 749.

[2] It is equally well settled that when a creditor accepts the mere promise of his debtor to perform some act in the future in satisfaction of the debt, the mere promise itself, without performance, is sufficient to extinguish the debt. *Manley* v. *Vermont Mutual Fire Ins. Co., supra,* and cases there cited. But in such case it must clearly appear that it was the *mere promise* to perform, and not *performance* itself, that the debtor agreed to accept in satisfaction of his debt. *Goodrich et al.* v. *Stanley,* 24 Conn. 613; *Kromer* v. *Heim,* 75 N. Y. 574, 31 A. R. 491; *Henderson* v. *McRae,* 148 Mich. 324, 111 N. W. 1057.

"When the performance of the new promise was the thing to be received in satisfaction, then, until the performance, there is not complete accord; and the original obligation remains in force." *Kromer* v. *Heim, supra,* and cases there cited. *Frankfurt-Barnett Co.* v. *William Prym Co.,* 237 Fed. 21, 150 C. C. A. 223, L. R. A. 1918 B, 602.

The plaintiff offered the defendant an "increased price," and finally $12.50, per cord, for the Shrewsbury wood, to be delivered on the cars as soon as it could be drawn; and the defendant promised to deliver it. The first question to be determined is whether the evidence tends to show that the plaintiff accepted the mere promise of the defendant in satisfaction of the original contract; because it is admitted that the wood was not delivered.

[3] In considering the exception to the granting of the motion for a directed verdict, the evidence must be viewed in the light most favorable to the defendant. *Morris* v. *Trudo,* 82 Vt. 44, 74 Atl. 387, 25 L. R. A. (N. S.) 33; *Fitzsimons* v. *Richardson, Twigg & Co.,* 86 Vt. 229, 84 Atl. 811; *Bass* v. *Rublee,* 76 Vt. 395, 57 Atl. 965. The defendant testified, touching the claimed modification as to price and time of delivery, in substance, that in January or February, 1917, the plaintiff asked him if he "was getting out any wood" and that he told him that his company would have wood at North Shrewsbury, but wanted to deliver it at Cuttingsville; that plaintiff replied that he "couldn't take it, that the contract called for delivery on the D. & H. Railroad"; that plaintiff said he would make the price right, and would like the wood as soon as it could be drawn.

It did not appear when the matter was next spoken of, but the defendant testified that it was referred to several times during the summer and fall of 1917, the plaintiff urging the defendant to deliver the wood, and telling him that he would increase the price; that in August the plaintiff told him, "whenever the price went up, that he gave the people that he had contracts with the benefit of the increased price"; and that he would give him the benefit of the advance, and December 21, 1917, plaintiff wrote him that the increased price would be $12.50. The defendant also testified that to get the increased price "I was to get the plup wood loaded into the cars."

The defendant offered no direct evidence to show that he accepted the plaintiff's offers, or any of them; but in his brief he calls attention to testimony of the plaintiff relative to a conversation that took place in December, 1917, which he claims shows such acceptance. The plaintiff testified: "A. I insisted upon the contract being filled, and I offered him a bigger price if he would go to work and fill the contract. Q. What did he say whether he would or would not? A. I understood that he would. Q. What did he say about it? A. He said that he would."

[4] We think that the only conclusion that can be fairly drawn from this evidence is that there was a mutual agreement between the parties that the defendant should deliver, and the plaintiff accept, the Shrewsbury wood in satisfaction of the original contract. It was only an agreement that that contract might be performed in that particular way. That the plaintiff did not rely on the mere promise of the defendant to deliver, but rather on the performance of that promise, clearly appears from his testimony: "I insisted upon the contract being filled and I offered him a bigger price if he would go to work and fill the contract"; and we find nothing to indicate that the defendant had a different understanding of the matter. There were, to be sure, mutual promises of the parties, and the promise of one was the inducement of the other; but the promise of the defendant was to deliver, and that of the plaintiff was to accept, not the mere promise of the defendant, but the performance of such promise. It is like the ordinary case, where parties agree that an obligation shall be paid in a particular mode, other than according to its terms, in which there are, of course, mutual engagements on one side to pay, and on the other side to accept payment, in that mode; but the promise so to pay is not understood

to be in itself, and independent of its performance, a payment or satisfaction of such obligation, and in that case the mere circumstance that there was an agreement, with mutual promises, does not have the effect of extinguishing the obligation.

We think that this action can be maintained unless the plaintiff is barred by his refusal to return the original contract to the defendant. The only evidence to which the defendant calls attention in his brief to support his claim that the plaintiff agreed as part of the modified contract to return the original contract is the following from the cross-examination of the defendant: "Q. And clear down to sometime, I think you stated in the spring of that year, he was still insisting that he wouldn't give up the old contract? A. No, he promised me several times that he would. Q. (By the court.) On what conditions was he going to give it up? A. He said that he would on condition that I would ship some wood. Q. You demanded one of two things, either a surrender of that paper, or an absolute release from it before you would ship a stick of wood to him? A. That was his agreement with me. Q. Do you answer that yes or no? A. Yes." And this is the only positive evidence in the case of what the agreement on this subject was. The defendant argues that this evidence tends to show that the plaintiff agreed to return the original contract to him, or release him therefrom, before the wood was shipped.

We think it doubtful if the evidence quoted, taken as a whole, has such tendency. In answer to the direct question by the court, "On what condition was he going to give it up?" referring to the original contract, the defendant testified, "He said he would on condition that I would ship some wood." This answer seems to have been given understandingly, in reply to a perfectly plain question, and it does not appear that the later testimony was an attempt, even, to modify or change this answer.

If the contract were to be given up "on condition that" the defendant "would ship some wood," he clearly was not entitled to demand it before he shipped any wood. But, however that may be, it is not claimed that the plaintiff agreed to return the original contract before the wood was loaded into the cars; and the defendant not only refused to ship the wood until the contract was returned, or he was released from a performance of it, but he refused to load it into the cars. The defendant testified

that under the modified contract, "I was to get the pulp wood loaded into the cars."

At the time it is claimed the plaintiff refused to return the original contract, and thereby released the defendant from fulfilling the modified one, the defendant had only about two carloads of wood in Rutland, the balance still being in Shrewsbury, and he refused to load into cars what was in Rutland until the old contract was returned. This was a condition that, even on his own evidence, he had no right to impose.

[5] He says, however, that he was ready to load into cars the wood in Rutland, if the plaintiff would return the original contract or release him therefrom. This was not sufficient to excuse him from performance.

[6] Mere readiness to perform the accord, or a tender of performance, or even a part performance and a readiness to perform the rest, is not sufficient. *Prest* v. *Cole,* 183 Mass. 283, 67 N. E. 246; *Hosler* v. *Hursh et al.,* 151 Pa. St. 415, 25 Atl. 52; *Russell* v. *Lytle,* 6 Wend. (N. Y.) 388, 22 A. D. 537; *Burgess* v. *Denison Paper Mfg. Co.,* 79 Me. 266, 9 Atl. 726.

[7] During the cross-examination of the plaintiff, he testified, "I buy for the Union Bag & Paper Company." He was then asked if he acted for that company "in buying pulp wood," and answered, "No; I buy for myself and ship to the Union Bag & Paper Company." He was then asked if he was paid a commission "for acting for them." This was excluded, and the defendant was allowed an exception. He now argues that the exclusion of this evidence was error, because, if the plaintiff was buying on commission, the only damages recoverable in this suit would be the commission lost.

We do not think this claim tenable. The written contract was executed by the plaintiff in his own name, and so far as appears the Union Bag & Paper Company was not known in the transaction. The plaintiff, therefore, can maintain the suit in his own name, whether he contracted for himself or an undisclosed principal. *Camp* v. *Barber,* 87 Vt. 235, 88 Atl. 812. As was there said: "This rule works no injustice to the other party to the contract, since he may avail himself of all defences that are good, either against the agent or the principal." It would seem to follow, therefore, that the rule of damages must be the same whether the plaintiff contracted for himself or for the Union Bag & Paper Company. We think that the evidence was prop-

erly excluded. Moreover, the plaintiff, later introduced evidence to show the amount of damage, measured by the general rule, and the court charged the jury that they would be governed by that rule in assessing the damages, all without objection. The exception might well have been treated as waived.

The defendant excepted to the action of the court in submitting the case to the jury upon the original contract. In view of our disposition of the exception to the action of the court in directing a verdict for the plaintiff, it is not necessary to consider this exception.

*Judgment affirmed.*