GEORGE A. HALL v. JOHN P. GIFFORD.

February Term, 1927.

Present: POWERS, SLACK, and FISH, JJ.

Opinion filed May 4, 1927.

*Sales—Effect of Agreement To Accept Return of Goods Sold Unconditionally in Exchange for Others—Rescission—Damages.*

1.  Where furniture dealer sold certain furniture unconditionally at a fixed price, and after delivery, buyer, not being satisfied therewith, expressed a desire to exchange such furniture for better suite, whereupon seller accepted proposition and took furniture back, it was not necessary for seller to make any offer, but was buyer's duty to call at seller's store and select other suite within reasonable time, failing in which there was no rescission of original contract, and seller could recover thereon.

2.  In such circumstances, while seller was under no obligation to sell original suite after buyer failed to make new selection within reasonable time, having made such resale, in action to recover on original contract seller was bound to account for benefit received thereby, and his measure of damages was original

sale price, plus expense of bringing original suite back to his store from buyer's home, less amount received on resale.

ACTION OF CONTRACT.   Plea, general issue.   Trial by court at the March Term, 1926, Chittenden County, *Moulton,* J., presiding.   Judgment for the defendant.   The plaintiff excepted. The opinion states the case.   *Reversed, and judgment for plaintiff.*

*V. A. Bullard* and *C. P. Cowles* for the plaintiff.

*M. M. Wilson* for the defendant.

FISH, J.   This is an action of contract in which the defendant had judgment below on facts found by the court.   The plaintiff's exception to this judgment raises the only question presented for review.

The pertinent facts are these:   On August 30, 1920, the defendant, a resident of Randolph, purchased the furniture in question from the plaintiff, a dealer in Burlington, for the sum of $476.   The plaintiff later delivered the same to the defendant in Randolph.   On October 1, 1920, not having paid the purchase price, the defendant wrote the plaintiff that upon looking it over he was not satisfied with it, and that ''We would like to enter into negotiations to obtain something a little better built if agreeable to you, exchanging this.''   To this letter on the seventh of the same month the plaintiff replied: ''I am willing to do about anything you may suggest with regard to changing * * * We have sets coming rather freely now, and you may be able to find something that would suit you better.   I certainly want to feel that you are satisfied with your purchase before closing the deal.''   At some time after this letter was written the plaintiff sent a truck to Randolph and took the walnut suite back to his store in Burlington at a cost of $35.

A suite of brown mahogany having been received by the plaintiff, he wrote the defendant's wife on November 1, 1920: ''The brown mahogany suite has arrived and seems to be in first-class shape—however I think it would be very foolish to send it to Randolph without first having you see it here and so we will wait to hear from you further with regard to the same.''

During the following spring the defendant and his wife

visited Burlington and inspected the mahogany suite and were not satisfied with it. No other negotiations took place, and no other suite was offered to them by the plaintiff, nor is it found that the defendant requested to be shown other suites. After taking back the walnut suite the plaintiff sold it in the course of trade at a discount of 25 per cent., due to a fall in prices. The mahogany suite, after defendant's refusal to accept it, was likewise sold by the plaintiff in the usual course of business. The defendant did not agree to take the mahogany suite or any particular suite. The plaintiff sold out his stock of goods and went out of business in the spring of 1923. The plaintiff brought his suit in general assumpsit. He claims that there was a completed sale of the walnut suite and no rescission except such as was conditioned upon the defendant's taking a second suite—a condition which he did not fulfill. The defendant says that there was no contract for the purchase of any particular suite, the plaintiff having sent a truck to Randolph and voluntarily taken the first suite back and having written, ''I certainly want to feel that you are satisfied with the purchase before closing the deal.'' He further says that there was no contract to exchange; that the defendant did not agree to bind himself to take any suite; that there being no contract of sale there can be no recovery for loss of profits; that the findings show an unconditional rescission or revocation of the sale of the walnut suite, and as there was no other or further contract of sale the defendant says that the plaintiff cannot recover damages or profits on any sale.

[1] On the facts as found by the trial court, it is certain that the sale of the walnut suite was unconditional. It was sold and delivered at a fixed price. There was no claim of fraud. After the sale of the walnut suite, upon the defendant's request, negotiations were entered into for the exchange of this suite for a better one, in furtherance of which the plaintiff sent his truck to Randolph and brought back to his store the walnut suite. It reasonably appears from the findings that this was done upon the understanding that the defendant would select a better suite. This was not done. The defendant made but one visit to the plaintiff's store after this, and not being satisfied with the mahogany suite did nothing further, although the plaintiff remained in business for several years thereafter. The new arrangement of the parties required the defendant within a rea-

sonable time to call at the plaintiff's store and select another suite. It was not necessary for the plaintiff to make the defendant any offer. It was for the defendant to select a suite in place of the walnut one or take the latter back. He did neither.

The walnut suite was taken back upon the condition that a better suite should be purchased, and this condition not having been complied with, there was no rescission of the original contract. *Lightfoot et al.* v. *Strahan,* 7 Ala. 444. This is not a case where the creditor accepted the mere promise of the debtor to perform some act in the future in satisfaction of the debt, in which case the mere promise itself without performance is sufficient to extinguish the debt, but rather is a case where the performance of the new promise was the thing to be received in satisfaction, in which case the original obligation remains in force. *Sargent* v. *Donahue,* 94 Vt. 271, 274, 110 Atl. 442; *Hard* v. *Burton & Burton,* 62 Vt. 314, 322, 20 Atl. 269.

According to the decision of this Court in *West* v. *Cutting,* 19 Vt. 536, the mere taking back of the walnut suite did not constitute a rescission of the contract of its sale. In the case cited the defendant sold to the plaintiff a quantity of tea which proved not to be good, and the plaintiff returned it to the defendant, who received it and said he would have some good tea soon and would replace it, to which the plaintiff assented. The plaintiff later sued to recover the purchased price of the tea which he had paid; but this Court held that this did not amount to an absolute rescission, which would make the defendant debtor to the plaintiff either for the money, or the tea unless called for, and that it imported no obligation on the part of the defendant to carry the tea to the plaintiff.

The plaintiff in the instant suit having agreed to an alteration of the original contract, and the defendant having failed to perform the original or the substituted contract, it became the right of the plaintiff to sue on the original contract. In *Lawrence* v. *Dole,* 11 Vt. 549, 556, it was said by this Court: "If the payee agree to an alteration of a contract, and the payor fail to perform either the original or the substituted contract, the payee may sue upon the original contract."

[2] The plaintiff was under no obligation to sell the walnut suite, but he did so and is bound to account in justice for such benefit as he received thereby. The sum received from the sale

was $357, which sum less the expense to him in bringing the suite back from Randolph, he should account for, making $322. The latter sum applied in reduction of the purchase price of the walnut suite leaves a balance of $154, which is due the plaintiff with interest.

*Judgment reversed and judgment for the plaintiff for $154 with interest from August 30, 1920, as of the May Term, 1927.*